# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

Case: 1:25-cv-03127   JURY DEMAND
Assigned To : Friedman, Paul L.
Assign. Date : 9/11/2025
Description: Pro Se Gen. Civ. (F-DECK)

**KRSTAFER PINKERTON,**

individually and as Next Friend

Relator for elderly and disabled

residents deprived of rights;

**DANIELLE and TIMOTHY**

**JENKINS**, individually; **ROBIN**

**DEVINE**, individually; **DAN and**

**BETH FOSS**, individually; and

Plaintiffs.

v.

**DEBRA REINHARDT; CEOMC,FL.**

**INC, RESOURCE PROPERTY**

**MANAGEMENT, INC.; NEW**

**ATLANTIS CLUB CONDOMINIUM**

**ASSOCIATION, INC.;**

**POINT BRITTANY ASSOCIATION,**

**INC.;** and JOHN DOES 1–150, JANE

DOES 1–150,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

**VERIFIED COMPLAINT AND MOTION FOR EMERGENCY
RECEIVERSHIP AND INJUNCTIVE RELIEF**

**(Fed. R. Civ. P. 3, 8, 9, 10, 11, 23, 65, 66; 18 U.S.C. § 1964(a))**

**RECEIVED**

SEP 1 1 2025                    Page **1** of **33**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## INTRODUCTION AND EMERGENCY RELIEF REQUESTED

1. This is a high-dollar theft and concealment case—front-loaded, documentary, and urgent. Plaintiffs move under FRCP 66 and FRCP 65 for appointment of a Temporary Receiver and entry of a narrowly tailored TRO to stop a redevelopment-by-distress scheme now harming elderly and medically vulnerable residents at New Atlantis Club ("NAC") and Point Brittany ("PBAC"). The record already shows, in black-and-white: (i) a multi-million-dollar loan (≈ $3.5 million) collateralized by owners' assessments and account controls without a member vote authorizing that encumbrance (see **Ex. EO: Note/Amendments; Collateral Assignment of Right to Collect Assessments; Board Incumbency/Resolutions; UCC-1 & recorded modification); (ii) a forgiven PPP loan of ≈ $2.99 million to the management company (RPM) coupled with PPP amounts pushed into NAC's books; and (iii) at least $28,838 in PPP-labeled entries carried, deposited, and recycled through NAC's asset/liability and GL trails (see Ex. PA Apr–Dec 2023-2024),** even as owners were told something very different. Layered on top are admissions of "fraudulent account activity" and an ACH miss plus double payment to backfill fees (**Ex. GE, 11/12/2024**), certified cease-and-desist letters aimed at witnesses (**Ex. E**), and minutes edits ordered after the fact to make a vendor "zero-dollar" when a $22,000 check proves otherwise (**Ex. BF**). This is not speculative: it is a paper case, and the paper is already before the Court.

2. The stolen-/misapplied-funds picture is concrete and triable—and requires a receiver's keys now. The Court need not resolve the full amount at this stage to preserve it. The exhibits show large-ticket cash decisions that bypass owner

authorization and hide true costs and risks. Robin Devine and Krstafer Pinkerton escalated the matter to federal banking oversight on August 22, 2025, mailing a seven-page complaint with exhibits to the FDIC Consumer Response Center via USPS Certified Mail (Tracking No. 9589071052702634942975) at 1100 Walnut Street, Box #11, Kansas City, MO 64106 **(see Ex. FDIC).**

3. Loan without vote; collateral pledge of assessments; bank control. NAC's Amended & Restated Note (2023) and Collateral Assignment give Popular Bank the right to appoint a receiver upon default and place owners' assessments directly in harm's way—without any unit-owner vote reflected in minutes noticed to the membership **(see Ex. EO)**

4. PPP trail baked into NAC ledgers. NAC's Balance Sheets and reconciliations repeatedly carry "PPP Proceeds – 10/27 $28,838" and Popular Bank "PPP" CDARs 3462 4.493% $28,838, plus a GL deposit 3/31/2023 – "PPP Reimbursement $28,838 (Ref 5137627)", followed by a CDAR closure (see **Ex. PA, Apr–Dec 2023**). Meanwhile RPM's PPP appears as ≈ $2.99M forgiven (**Ex. EO**, ProPublica capture), leaving owners with the billed/parked piece on their statements.

5. "Fraudulent account activity," ACH miss, and double payment. The NAC/RPM Controller's email admits last-year fraudulent account activity, a new operating account (…9665), a missed ACH, and two payments on 11/12/2024 to backfill Master fees (**Ex. GE p.2**), corroborated by invoice rows (**Ex. GE p.4**) and owner reconciliation demand (**Ex. GE p.5**).

6. Minutes rewritten; $22,000 check proves falsity. PB4 minutes claiming a "zero-dollar" cancelation were followed by counsel/board emails to delete the sentence and not contact the vendor; a $22,000 check image disproves the narrative (**Ex. BF pp. 37–50; 40**).

7. Civil citations & fire reports. Unsafe/unpermitted shoring (City Civil Citation 24-00010371) and change-of-use findings (Fire Marshal MobileEyes) raise life-safety exposures that cannot be repaired by money alone (**Ex. BF pp. 63–69**).

8. These are the hallmarks of ongoing diversion and concealment. A Receiver needs the keys to the accounts and systems now to stop dissipation and lock evidence. The policy/finance machine behind it is admitted on the record—and it is funded and coordinated. **Ex. D-1** (CEOMC transcript) memorializes that CEOMC is "the main lobbying effort," runs pre-election candidate interviews and endorsements, prevailed in nearly every endorsement, and that SB 4-D sailed through with no amendments and no public testimony; the transcript also explains the tactical choice to "hold back" email floods while inside negotiations progressed and delivered "nearly all we asked for." **Ex. D-2** (Florida Legislative Lobbyist registrations) shows the DBPR Secretary registered as a legislative lobbyist (2022–2025)—public-record regulator entwinement. **Ex. D-3** (CEOMC/RPM donations ledger, 2015–2024) documents large, repeated political disbursements routed from the 7300 Park Street, Seminole hub. Together with **Ex. CN** corroborants (notaries; DBPR filings; PBAC minutes/complaints), these exhibits satisfy enterprise, operation/management, pattern, and means/funding under § 1962(c),(d) and support § 1965(b) "ends of justice" venue in D.C.

9. Plaintiffs meet Winter/Davis on (a) likelihood (documentary predicates, admissions, ledgers, contracts); (b) irreparable harm (safety; non-compensable evidence loss; marketability); (c) equities (elderly/medically vulnerable owners); and (d) public interest (life-safety; financial honesty). The record fits civil-RICO jury instructions—enterprise (*Boyle*), conduct/participation (*Reves*), pattern (*H.J. Inc.*), and injury (*Sedima, Bridge, Holmes/Anza*)—with admissibility under FRE 803(6)/(8) and 902(4)/(11)/(13) and summary charts under FRE 1006. Under FRCP 34(b)(2)(E), the Receiver will collect native ESI (minutes; virtual-meeting recordings; e-vote exports; accounting GL/recons; bank OFX/CSV; email PST/EML) with metadata and hash verification. LCvR 5.1/5.4 and FRCP 5.2 privacy are observed. Relief tailored to the fraud actually shown. **The Court should: (i) appoint a Temporary Receiver (FRCP 66) with §§ 754, 1692 nationwide reach to seize bank/depository/reserve/ICS accounts and admin credentials**, secure and produce native ESI, **suspend** conflicted contracts, and file a 21-day asset/records map and 45-day remediation plan; (ii) **enter a TRO (FRCP 65)** forbidding non-essential transfers, new debt/reserve pooling, retention/MFA changes, record migration/deletion, and **retaliation; and (iii) order 7-day production to the Receiver** of: bank statements & ACH/wire logs; signer/KYC files; loan/assignment/UCC papers; minutes (draft/final), meeting recordings, e-vote exports; management/vendor contracts & referral/ownership disclosures; dues-notice or proxy-tax records and Part VI board-review minutes; and bid/contract files with bonding/insurance binders and change-order trails. This is the minimum needed to freeze dissipation, stop the cover-up, and let the facts speak.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under **28 U.S.C. § 1331** (federal question). Plaintiffs assert claims under **RICO, 18 U.S.C. §§ 1961–1968**; the **False Claims Act (FCA), 31 U.S.C. §§ 3729–3730**; **42 U.S.C. § 1983**; and direct claims under the **First** and **Fourteenth Amendments** to the U.S. Constitution.

11. This Court also has jurisdiction under **28 U.S.C. § 1343(a)(3)–(4)** for **§ 1983** civil-rights claims. Acting under color of state law, **Melanie S. Griffin** (as DBPR Secretary) and **Governor Ron DeSantis** deprived Plaintiffs and similarly situated residents of federal rights by **suppressing voting rights**, **shielding forged instruments**, and **selectively declining enforcement** of statutory protections.

12. The Court has **supplemental jurisdiction** under **28 U.S.C. § 1367** over related state-law claims (breach of fiduciary duty, fraudulent concealment, conversion, and violations of **Fla. Stat. ch. 718** (Condominium Act), including **§§ 718.111, 718.112, 718.3026**), which arise from the same nucleus of operative fact.

13. Personal jurisdiction is proper under **18 U.S.C. § 1965(b)**, which authorizes **nationwide service of process** in civil-RICO cases where the **ends of justice** require a single forum. The enterprise spans **Florida–New York–D.C.**, implicates a **federally insured** financial institution (**Popular Bank**), and used interstate mails/wires to injure Plaintiffs and retaliate against whistleblowers.

14. Venue is proper under **18 U.S.C. § 1965(a)–(b)**. Civil-RICO permits consolidation of all enterprise members in one district when the **"ends of justice"** so require. As

noted in *Sedima, S.P.R.L. v. Imrex Co.*, **473 U.S. 479, 497 (1985)**, RICO is **liberally construed** to dismantle ongoing enterprises that injure property rights; centralized D.C. venue best serves **preservation** and **nationwide tracing**.

15. Venue is proper under **28 U.S.C. § 1391(b)(2)** because a substantial part of the events were directed to or occurred in **Washington, D.C.** Plaintiffs submitted complaints to **FDIC** and **DOJ** in D.C.; Defendants used the **U.S. Mail** and **interstate wires** to transmit fraudulent loan/assessment materials and retaliatory communications into this District; and the scheme impacted **federal agencies headquartered here**.

16. Plaintiffs have **Article III standing**. Concrete injuries include coerced assessments, fraudulent debt obligations, retaliation, vote suppression, and deprivation of statutory/constitutional protections. These injuries are fairly traceable to Defendants' conduct, including **RPM's ghost-account activity (Ex. GE)**, **vote suppression at the April 2025 meetings (Ex. JN**; cross-pins **Ex. BF**), **executive handling of notary felonies (Ex. CN)**, and **DBPR's acknowledgment followed by closure** of systemic complaints (**Ex. CN** and, where letters appear, **Ex. JN**).

17. Injuries are **redressable** by the requested relief: injunctions halting unlawful assessments/demolitions; appointment of a **federal Receiver**; **treble damages** under RICO; **FCA** statutory remedies; and declaratory relief voiding fraudulent contracts/amendments.

18. **Diversity jurisdiction** under **28 U.S.C. § 1332** provides an alternative basis. Plaintiffs are citizens of **Oregon** and **Florida**; Defendants include citizens of Florida and a **federally chartered** bank headquartered in **New York**. The amount in controversy **exceeds $75,000**, exclusive of interest/costs, as Plaintiffs challenge ≈ **$3.5M** indebtedness at NAC, ≈**$1.5M** fabricated hurricane assessments at PBAC, and unlawful loans/contracts exceeding **$5M** cumulatively.

19. The RICO claims satisfy **pattern** under **18 U.S.C. § 1961(5)** (at least two predicates within ten years). The exhibits—**B1, GE, JN, BF, CN, D-1, D-2, D-3, E, EO, PA, GJ, LC, NAC10, N**—show a **multi-year continuum (2020–2025)** of fraud, obstruction, and concealment. Under *H.J. Inc. v. Northwestern Bell*, **492 U.S. 229, 239 (1989)**, continuity may be **closed-ended** or **open-ended**; here, the enterprise continues and presents a **threat of future harm**.

20. Plaintiffs plead fraud with **Rule 9(b) particularity**, specifying the who/what/when/where/how, including the **Aug. 19, 2025** Esernio email admitting **"fraudulent account activity" (Ex. GE)**, the **Apr. 21, 2025** Serrano admission collateralizing unauthorized loans (**Ex. B1**; cross-pins **Ex. BF**), and **DBPR's Nov. 13, 2024** acknowledgment followed by **"insufficient"** closure (**Ex. CN** and, where housed, **Ex. B1**).

21. This Court's jurisdiction is further supported by its **inherent power** to grant **declaratory and equitable relief** to prevent ongoing violations of federal law, including under *Ex parte Young*, **209 U.S. 123 (1908)**, which permits **prospective**

**injunctive relief** against state officials sued in their official capacities to halt unconstitutional acts.

22. **Ends of justice; elder-abuse shelving by state actors.** Venue in **Washington, D.C.** is necessary because the **ends of justice** require an **independent federal forum** to address **elder-abuse harms** that Florida executive agencies **shelved or downgraded**. The record shows the **Governor's Notary Program** issued **resignations/caution letters** in the face of **confirmed notarial violations**, thereby insulating forged instruments from judicial challenge (**Ex. CN**), and **DBPR acknowledged** multi-owner complaints (e.g., **Nov. 13, 2024**) only to close them as "**insufficient**" despite voluminous submissions (**Ex. CN**, and where letters are housed, **Ex. JN**). This pattern of **state-level non-enforcement** specifically harms **elderly and medically vulnerable owners**, justifying D.C. consolidation under **18 U.S.C. § 1965(b)**.

23. The scheme directly implicates **federal banking and program-integrity** interests: (a) **FDIC/SBA/DOJ** contact points for **PPP forgiveness (~$2.99M)** documented in **Ex. EO**, with **PPP-labeled $28,838** ledgers/GL in **Ex. PA**; and (b) **FDIC/FRB** concerns where "**fraudulent account activity,**" an ACH miss **($14,623.69), and a double-payment backfill** were admitted in writing (**Ex. GE**). These **federal custodians** and policy bodies are centered in **D.C.**, making this District the appropriate venue to coordinate **subpoenas, preservation orders, and interagency relief**.

24. A **Receiver** appointed here will file **28 U.S.C. § 754** notices and use **§ 1692** process to marshal **bank/depository/reserve/ICS** accounts and **native ESI** wherever located. Centralizing in **D.C.** avoids **piecemeal litigation** and ensures consistent **All-Writs** preservation and a unified **FRCP 34(b)(2)(E)** native-production protocol for **OFX/CSV (banks), CSV/XLSX (GL), PST/EML (headers), MP4/WebM (recordings)**.

25. **Avoiding local entanglement and retaliation.** Given the **state-level entwinement** shown in **Ex. CN** (executive handling), the **April 2025 meetings** suppressing votes (**Ex. JN**; cross-pins **Ex. BF**), and **retaliatory C&Ds/law-enforcement referrals (Ex. E)**, a **non-local forum** reduces the risk of **local intimidation** and **conflict of interest**. D.C. venue allows the Court to issue **neutral, enforceable preservation and anti-retaliation orders** while the Receiver stabilizes governance.

26. **Statutory grounding for D.C. venue.** Venue lies in this District under a **dual pathway: 28 U.S.C. § 1391(b)(2)** (substantial events directed here, including filings with **FDIC** and **DOJ**; interstate **mail/wire** transmissions into D.C.) and **18 U.S.C. § 1965(b)** (RICO "**ends of justice**" consolidation). With **nationwide service** authorized, **FRCP 4(k)(1)(C)** anchors due process to **national contacts**, satisfied by **interstate mails/wires**, **multi-district banking**, and the **federal program** aspects at issue.

27. **Public-interest equities unique to D.C.** The federal interest in protecting **elderly and medically vulnerable** owners from **ongoing financial and records abuse** is

acute where **state officials** allegedly **shelved complaints**—and where relief requires **federal-level coordination** (banking, program integrity, housing safety). Consolidation here ensures **rapid, uniform** relief: a **Receiver** with **nationwide** tools, **TRO** terms to halt **retaliation**, and **native-format** productions that preserve the evidentiary record for trial (**Ex. B1; CN; JN; E; GE; EO; PA**).

### Plaintiffs

28. Krstafer Pinkerton is a resident of Klamath County, Oregon, residing at 28646 Drew Road, Chiloquin, OR 97624. He is an investigative journalist, whistleblower, and Regional Coordinator for the Center for Estate Administration Reform (CEAR). Pinkerton brings this action individually and as **Next Friend** for **elderly and disabled Floridians** who have been deprived of their rights through fraudulent condominium governance, guardianship abuse, and estate theft. He has standing as a direct victim of retaliatory harassment, as well as on behalf of those whose estates and property interests have been stripped by the enterprise.

29. **Robin Devine** is a resident of Pinellas County, Florida, living at 12760 Indian Rocks Road, Unit 571, Largo, FL 33774. Devine, a registered nurse, has been directly harmed by fraudulent assessments, retaliatory communications, and concealment of association records. She has been targeted for asserting statutory rights, including receipt of cease-and-desist letters from Defendants' counsel for exposing fraudulent banking activity. **(Ex. B1)**

30. **Danielle and Tim Jenkins** are residents of Pinellas County, Florida, residing at 5200 Brittany Drive South, Unit 204, St. Petersburg, FL 33715. Following the 2017 death of their daughter, Alexis ("Lexi") Jenkins, they led a public safety campaign

commonly known as Lexi's Law, reflected in Hawaii legislative records for SB824 (2019) and SB615 (2021) and enacted as Act 214 (2021) (see RJN Exs. A–D). That proven record of evidence-based advocacy and successful statutory reform underscores their credibility, the public interest they represent, and the urgency of court intervention here. Within their Pinellas County community, the Jenkins family has been deprived of records, subjected to fabricated assessments, and threatened with foreclosure and demolition activity without a lawful membership vote. They are direct victims of the fraudulent contracts ratified by the enterprise and represent similarly situated owners across Florida.

31. **Dan and Beth Foss** are residents of Pinellas County, Florida, residing at 5200 Brittany Drive South, Unit 1201, St. Petersburg, FL 33715. The Foss family has been subject to the same treatment as Tim and Danielle Jenkins.

## Defendants

32. **New Atlantis Club Condominium Association, Inc.** is a Florida not-for-profit corporation (Document No. 753830). Principal Address: c/o Resource Property Management, Inc., 7300 Park Street, Seminole, FL 33777. Registered Agent: Rabin Parker Gurley, P.A., 2653 McCormick Drive, Clearwater, FL 33759.

33. **Point Brittany Administrative Corporation, Inc. (f/k/a Point Brittany Association, Inc.)** is a Florida not-for-profit corporation (Document No. 770865). Principal Address: 5055 Brittany Drive South, St. Petersburg, FL 33715. Registered Agent: Deanna Pecoroni, 5055 Brittany Drive South, St. Petersburg, FL 33715.

34. **Resource Property Management, Inc. (RPM)** is a Florida profit corporation (Document No. S64106). Principal Address: 7300 Park Street, Seminole, FL 33777. Registered Agent: Debra Reinhardt, 7300 Park Street, Seminole, FL 33777. Phone: (727) 581-2662 (corporate headquarters).

35. **Debra Reinhardt** is an individual residing and conducting business in Pinellas County, Florida. She is the owner and executive of RPM and served as President of CEOMC. Service Address: 7300 Park Street, Seminole, FL 33777.

36. **Rabin Parker Gurley, P.A.** is a Florida professional association (Document No. P10000068834). Principal Address: 2653 McCormick Drive, Clearwater, FL 33759.

37. **Bennett L. Rabin, Esq.** is an attorney licensed in Florida, Bar No. 394580. He served as counsel for the associations and admitted during board meetings that his loyalty was to the board rather than the membership. Office Address: 2653 McCormick Drive, Clearwater, FL 33759. Phone: (727) 475-5535.

39. **Popular Bank** is a federally chartered and FDIC-insured financial institution authorized to do business in Florida (Foreign Profit Corporation Reg. No. F00000006256). Florida Registered Agent: Israel Velasco, 7900 Miami Lakes Drive W, Miami Lakes, FL 33016. Corporate Headquarters: Popular, Inc., 85 Broad Street, 10th Floor, New York, NY 10004. Phone: (305) 558-6511 (Miami Lakes branch).

40. **John Does 1–150 and Jane Does 1–150** are unknown legislators, lobbyists, attorneys, notaries, bankers, and officials who knowingly participated in the racketeering enterprise. Their identities will be revealed through discovery.

## FACTUAL ALLEGATIONS

41. *Exhibit set: B1, GE, JN, BF, CN, D-1, D-2, D-3, E, EO, PA, GJ, LC, NAC10, N. Plaintiffs allege the following on personal knowledge as to themselves and their records, and on information and belief as to all other matters, with citation to the documentary exhibits identified parenthetically.*

42. **Exhibit GE — Ghost Accounts, Controller Admission, and Overcharge Documentation**

43. Since at least 2020, Defendants—acting through Resource Property Management, Inc. ("RPM") and association officers—created, changed, and maintained **ghost operating accounts** at Popular Bank that were not the properly noticed depositories of New Atlantis Club ("NAC") and Point Brittany ("PBAC"), thereby concealing unapproved transfers and impairing owner oversight. (Ex. **GE**.)

44. Contemporaneous **loan and corporate records** reflect **struck-out officer names, altered signatures, and entity-name corruption** (e.g., "New Atlantis **Condo** Club"), which are inconsistent with normal document integrity and were used to **route funds outside the announced accounts. (Ex. B1; EO**; Ex. **N.**)

45. Deposits and transfers directed by **Debra Reinhardt**—RPM executive and CEOMC president—were repeatedly **routed into non-noticed accounts** and later backfilled in association narratives, masking the location and movement of member assessments. **(Ex. GE; Ex. EO.Ex. B1; )**

46. On **August 19, 2025**, RPM's controller **Gavin Esernio** admitted by email: "**Due to the fraudulent account activity last year, a new operating account (ending in 9665) was opened around September/October 2024.**" (Ex. **GE**, p.2.)

47. The same email admits an **October 2024 ACH miss** for the PBAC **Master fees ($14,623.69)** and that **two payments were processed on 11/12/2024** to cover **October and November**, demonstrating **post-hoc backfill** behavior consistent with account switching. (Ex. **GE**, pp. 2, 4.)

48. On **August 15, 2025**, owner **Diane J. Meleen** demanded a **reconciliation** of the **$14,623.69** discrepancy, identifying the double-charge and requesting a credit. (Ex. **GE**, p. 5.)

49. **PBAC master-fee records** (2024–2025) corroborate the **duplicate/irregular debits** and the timing inconsistencies around the missed ACH and the November 12, 2024 double payment. (Ex. **GE**, p. 4.)

50. The foregoing is consistent with **bank-fraud mechanics** (use of controlled accounts to obtain and route funds), and **mail/wire usage** (assessment statements, portal PDFs, email notices) that **concealed the true disposition** of owner payments while **impeding** oversight. (Exhibits. **B1; GE; EO; N.**)

51. **Exhibit B1 — April 14 & 21, 2025 Board Meetings (with Ex. BF cross-pins)**

52. **Ex. B1** contains the **April 14 & 21, 2025** NAC meeting record (reconstructed transcripts, minutes, and references to the video). It documents that the loan amount publicly discussed to owners was **"corrected"** from **$3.3M** to **$3.5M**—a **$200,000 increase**—without a contemporaneous vote. (Ex. **B1**.)

53. On **April 14, 2025**, the Treasurer announced: "**Instead of 3,300,000, it's 3,500,000,**" which owners immediately challenged as **statutorily improper absent a membership vote**. (Ex. **B1**.)

54. Owners demanded a vote and cited the Condo Act; the **chair ignored** the motion and moved to end discussion. (Ex. **B1**.)

55. President **Anthony Serrano** threatened to **shut the meeting**, despite owners' objections and ongoing debate about the encumbrance of their assessments. (Ex. **B1**.)

56. Owners shouted "**Hello DBPR!**", who was also present on the Zoom meeting and to memorialize the violation and place the regulator on notice. (Ex. **B1**.)

57. On **April 21, 2025**, **Serrano** expressly admitted: "**The collateral… is the association's ability to put an assessment on the ownership… we have that $3.5 million line of credit.**" (Ex. **B1**.)

58. During the same meeting, **counsel Bennett Rabin** rejected calls for a membership vote, stating: "**These are not membership issues.**" (Ex. **B1**.)

59. Rabin then added: "**We represent the board, not the membership,**" which confirmed **undivided loyalty to the board** over the owners whose property was being encumbered. (Ex. **B1**.)

60. When owners persisted, **Serrano** again threatened closure, continuing a pattern of **silencing** owners during material debt approvals. (Ex. **B1**.)

61. The **meeting record** evidences a DARVO pattern—**Deny** the vote, **Attack** the objectors as disruptive, **Reverse** Victim/Offender by painting owners as the problem —while **advancing unapproved indebtedness**. (Ex. **B1**.)

62. The falsity of related governance narratives is corroborated in **Ex. BF**: minutes described a **"zero-dollar" cancellation**, yet the vendor received a **$22,000 "cancellation fee"** check; follow-up emails instructed that the **sentence be deleted** and the vendor **not be contacted**. (Ex. **BF**, pp. 37–50; 40.)

63. **Exhibit CN — Statewide Notary Misconduct & DBPR/Executive Handling Ex. CN** contains official correspondence from the **Governor's Notary Program** (2024–2025) and **DBPR complaint forms** that show **confirmed notary violations** —but **non-prosecution** outcomes, including **resignations** and **letters of caution**.

64. Complaints against notaries **Debra Slater, Ellen Morris, Dominique Connell, Gregory Kabel, Nicholette Gonzalez, Fred Hochsztein,** and **Rosario Soto de Perleche** were investigated; **violations were confirmed**, yet cases were closed without criminal referral. (Ex. **CN**.) This precedent shows that Governor Desantis is more concerned about shielding the enterprise rather than seeking justice.

65. In multiple cases, the executive letters stated the Program's **"limited jurisdiction"**—disclaiming any ability to **nullify** a fraudulent instrument or to **refer charges**. (Ex. **CN**.)

66. On **July 22, 2025**, notaries **Kabel** and **Gonzalez failed to cooperate**, yet were permitted to **resign**—again with **no charges**. (Ex. **CN**.)

67. On **December 18, 2024, Soto de Perleche** was found to have committed misconduct, yet received only a **caution letter**. (Ex. **CN**.)

68. By **downgrading outcomes** and limiting remedies to **letters of caution** or **resignations**, the Governor's Office effectively **insulated forged and defective notarizations** from challenge in subsequent proceedings. (Ex. **CN**.)

69. Those executive choices allowed **loan contracts, guardianship petitions, and estate instruments** with defective notarial foundations to **circulate as facially valid**, frustrating judicial scrutiny and owner redress. (Ex. **CN.**)

70. Plaintiffs allege that this course enabled the **continued use** of untrustworthy instruments in association governance and debt transactions affecting NAC and PBAC owners. (Ex. **CN.**)

71. The executive handling described above is probative of **foreseeable concealment** and a **preservation risk**, warranting **Receiver** custody of native records and metadata of all instruments derived from the implicated notaries.

72. **Exhibits D-1 / D-2 / D-3 — CEOMC Legislative Capture & Regulatory Entwinement  Ex. D-1** (CEOMC 2023 webinar transcript), **Ex. D-2** (Florida **Legislative Lobbyist** registrations for the **DBPR Secretary**, 2022–2025), and **Ex. D-3** (CEOMC/RPM **political-finance ledger**, 2015–2024) together show **lobby capture, regulatory entwinement**, and the **funding pipeline** supporting policy outcomes.

73. CEOMC publicly claims it is **"the main lobbying effort"**, that it **conducts pre-election candidate interviews and endorsements**, and that it **prevailed in nearly every endorsement**; CEOMC further states **"SB 4-D passed with no amendments and no public testimony."** (Ex. **D-1.**)

74. CEOMC also admits it **withheld** mass email campaigns not out of lack of support but because **inside negotiations** with sponsors were **progressing** and **delivering "nearly all we asked for."** (Ex. **D-1.**)

75. **Ex. D-3** shows **large, repeated political disbursements**—including high-value checks ($45k, $35k, $25k)—and **dozens** of $10k–$1k entries routed from **7300 Park Street, Seminole** (the management hub) into PAC/party/candidate accounts. (Ex. **D-3**.)

76. **Ex. D-2** confirms the **DBPR Secretary** was registered as a **legislative lobbyist** (2022–2025) on the same policy beat, evidencing regulator-industry **entwinement**. (Ex. **D-2**.)

77. Plaintiffs allege that this **policy machine** (CEOMC) and **regulatory posture** (DBPR) operated alongside **management** (RPM) and **banking** (Popular) to **shape statutory levers** and **conceal/normalize** conflicted transactions later implemented at the association level.

78. The combined effect is a **documented loop**: policy authorship and legislative success; regulatory non-intervention; and a sustained **finance channel** supporting the same outcomes. (Ex. **D-1; D-2; D-3**.)

79. Plaintiffs allege these facts are probative of **enterprise intent, means, and funding**, and of **D.C. venue** under **18 U.S.C. § 1965(b)** because the **ends of justice** require centralized federal administration of preservation and receiver remedies.

80. **Exhibit E — Retaliation & Witness Tampering (C&D Campaign)  Ex. E** documents a **coordinated retaliation** campaign: certified **cease-and-desist** letters, harassment notices, and **baseless** law-enforcement referrals designed to **silence** Plaintiffs and owner-witnesses after they revealed ghost accounts and fabricated amendments.

81. On **August 14, 2025**, RPM's counsel sent **C&D letters** to **Krstafer Pinkerton** and **Robin Devine** (and to Carl and Michelle Demko), threatening civil/criminal action unless disclosures ceased. (Ex. **E**.)

82. On **August 22, 2025**, **Devine** received **certified mail** reiterating litigation threats, demonstrating the use of the **U.S. Mail** as an intimidation tool. (Ex. **E**.)

83. Around the same time, counsel **referred Pinkerton** to the State Attorney/Sheriff for "**cyberstalking**" after he disseminated banking/amendment evidence—accusations **unsupported** by facts and intended to **discredit** and **chill** speech. (Ex. **E**.)

84. Owners pressing for votes or records were **excluded** from meetings, **denied** access, or **threatened** with fines/foreclosure, consistent with the **DARVO** pattern documented in **Ex. B1**. (Ex. **E**; Ex. **JN**.)

85. The timing and uniformity of these acts show retaliation is an **enterprise tactic**, not isolated misconduct. (Ex. **E**.)

86. Plaintiffs allege these acts interfered with **evidence-gathering and regulatory reporting**, aggravating the **preservation** risks already present at NAC/PBAC. (Ex. **E**.)

87. The same facts justify **TRO non-retaliation** terms and **Receiver custody** of communications systems to ensure witness access, meeting notice integrity, and record retention. (Ex. **E**.)

88. **Exhibit CN / Ex. B1 — DBPR Acknowledgments & Owner Complaints**

89. **Ex. CN** (DBPR complaint forms/agency responses) and **Ex. JN** (where letters are housed) contain **acknowledgments** of multi-owner complaints (e.g., a **40-owner** PBAC filing) reporting fabricated assessments and banking non-compliance.

90. On **November 13, 2024**, DBPR acknowledged receipt and stated the matter would be assigned to an investigator. (Ex. **CN/JN.**)

91. Plaintiffs allege that despite the volume of supporting material, DBPR subsequently **closed** the matter as **"insufficient,"** notwithstanding its earlier acknowledgment. (Ex. **CN/JN.**)

92. Complaints documented that **RPM fabricated a $1.5M hurricane estimate** without licensed contractors and **imposed unlawful assessments** on residents. (Ex. **CN/JN.**)

93. Owners also reported that association funds were **transferred to Popular Bank in Miami**, contrary to governing documents requiring **Pinellas County** depositories. (Ex. **CN/JN.**)

94. Plaintiffs allege DBPR had **constructive knowledge** of systemic fraud and misappropriation, yet **failed** to enforce **Fla. Stat. §§ 718.111, 718.112, 718.3026**. (Ex. **CN/JN.**)

95. These facts are probative of **regulatory abdication** and justify **Receiver-directed subpoenas** for DBPR native files, email headers, and case logs. (Ex. **CN/JN.**)

96. **Exhibits EO / PA / N — Loan & Security; PPP Trail; Recorded Instruments**

97. Rather than relying on an unfiled 350-page DBPR dossier, Plaintiffs attach the **filed, authenticated** records in their possession: **Ex. EO** (loan/security), **Ex. PA** (PPP trail), and **Ex. N** (recorded governance, Notice of Commencement).

98. **Ex. EO** and **Ex. PA** show **balance sheets, reconciliations, and GL entries** reflecting reserve/account flows, **CDARs 3462**, and **PPP-labeled entries—** including **"PPP Proceeds – 10/27 $28,838"** (liability), **Popular Bank "PPP" CDARs 3462 4.493% $28,838** (asset), and **3/31/2023 GL "PPP Reimbursement $28,838 (Ref 5137627)"**—followed by a **CDAR closure**. (Ex. **PA**.)

99. **Ex. N** shows **recorded instruments** and **amendments** including provisions relating to depositories, procedures, and bonding that were later weakened or ignored, explaining how unapproved banking and procurement decisions propagated.

100.   On **October 27, 2023**, a **PBAC tax lien ($7,984.27)** was redeemed via personal Visa, indicating **commingling**; Plaintiffs will attach that proof (if housed in **JN/CN**) or obtain it via **Receiver subpoenas**. (Ex. **JN/CN**, to the extent filed.)

101.   **Ex. EO** also contains the **ProPublica/SBA forgiveness snapshot** for **RPM PPP ≈ $2.99M (Forgiven)**, while **Ex. PA** shows **$28,838** PPP-labeled amounts appearing on NAC statements/GL—facts requiring **tracing** to determine whether association funds were used inconsistently with owner approvals.

102.   Minutes and notices in **Ex. JN** and **Ex. N** evidence **unauthorized demolition/common-area decisions** (e.g., "Country Store") without proper membership votes.

103.   Plaintiffs allege that despite accumulating evidence, **agency closures** persisted (Ex. **CN/JN**), increasing the need for **federal preservation** remedies and **centralized receiver** administration.

104.    The **loan/security** architecture (Note; **Collateral Assignment of Right to Collect Assessments** with a **receiver clause**; **UCC-1** perfection) confirms that owners' **assessments** were **pledged**, that **default** would invite **receiver appointment** by the secured party, and that such decisions were **not** presented for membership approval. (**Ex. B1, EO. Exhibits GE, BF, CN, D-1, D-2, D-3, E, EO, PA, GJ, LC, NAC10, and N** together show **relationship** and **continuity** of enterprise conduct from **2020–2025**. The scheme remains active and presents a **threat of continued harm**, satisfying **pattern** under **H.J. Inc. v. Nw. Bell**, 492 U.S. 229, 239 (1989), and warranting immediate **receivership** and **TRO-grade preservation** to protect elderly and medically vulnerable owners and to stabilize the evidentiary record for trial.

## COUNTS

### Count I – Mail Fraud (18 U.S.C. § 1341)

105.    Plaintiffs re-allege ¶¶ 1–105 and incorporate **Ex. B1,GE, JN, BF, CN, EO, PA, E.**

106.    Mail fraud requires **(1) a scheme to defraud, (2) intent** to defraud, and **(3) of the US. mails** in furtherance. *Schmuck v. United States*, 489 U.S. 705, 710 (1989). A misstatement/omission is **material** if capable of influencing a decisionmaker, *Neder v. United States*, 527 U.S. 1, 16 (1999). In civil RICO, **reliance is not required**, *Bridge v. Phoenix Bond*, 553 U.S. 639, 649–50 (2008).

107.    Defendants executed a **unitary scheme** to (a) **fabricate/obscure indebtedness** (converting **$3.3M** to **$3.5M** without a membership vote; pledging assessments via **Collateral Assignment/UCC-1**), (b) **conceal "ghost" accounts** and ACH routing (admission of **"fraudulent account activity,"** new account

...**9665**, **Oct. 2024 ACH miss $14,623.69, double-payment 11/12/2024**), and (c) **mail owner packets** (assessments, minutes, delinquency, C&D threats) that **omitted** collateralization, the ACH miss/double-pay, and **vote suppression**, thereby **inducing payments** and **lulling** oversight. *(Ex. EO; GE; JN; BF; E; CN.)*

108.   **Particular mailings – Rule 9(b).**

   **A. Assessment statements** concealing the **$14,623.69** miss and **11/12/2024** double-payment. *(Ex. GE pp. 2, 4–5.)* **B. Mailed/distributed minutes** for **Apr. 14 & 21, 2025** omitting the vote requirement despite admitted collateralization. *(Ex. B1; cross-pins Ex. BF pp. 37–50; 40.)* **C. Certified C&D** threats (Aug. 14–22, 2025) to chill disclosures/complaints. *(Ex. E.)* **D. DBPR acknowledgments** (e.g., **Nov. 13, 2024**) later **disregarded**, used to placate complainants while the scheme persisted. *(Ex. CN/B1.)*

109.   **Materiality & mail use.** Each mailing was **material** and traveled through the U.S. Mail to execute/advance the scheme. *Schmuck*; *Neder.*

110.   **FRCP/FRE.** Particularity satisfied. Authentication under **FRE 803(6)/902(11)** (business records), **FRE 902(13)** (e-data); **FRE 1006** summaries (billing/ACH timelines). **FRCP 34(b)(2)(E)**: **native** OFX/CSV, PST/EML, PDFs with metadata.

111.   **RICO predicate.** The conduct constitutes **racketeering activity** under **18 U.S.C. § 1961(1)** via **§ 1341**.

**Count II – Wire Fraud (18 U.S.C. § 1343)**

112.   Plaintiffs re-allege ¶¶ 1–113 and incorporate **Ex. GE, D-1, BF, EO, PA, B1**

113.   Elements parallel mail fraud but require **interstate wires** (email/streaming/portal/ACH/OFX). Materiality follows Neder v. United States, 527 U.S. 1, 16 (1999). In civil RICO, reliance is not required, Bridge v. Phoenix Bond, 553 U.S. 639, 649–50 (2008).

114. **Particular wires – Rule 9(b).**

a. **8/19/2025 controller email** admitting **"fraudulent account activity,"** opening ...9665, Oct. 2024 ACH miss $14,623.69, two payments 11/12/2024. *(Ex. GE p. 2.)*

b. **Online remarks** suppressing votes and admitting collateralization during April meetings. *(Ex. B1; cross-pins Ex. BF.)*

c. **CEOMC webinar (2023)** broadcasting **"SB 4-D passed with no amendments and no public testimony."** *(Ex. D-1.)*

d. **Portal postings** and **ACH/OFX** transmissions concealing the true banking posture. *(Ex. BF; EO/PA.)*

115. **Material/lulling.** Each transmission **lulled** owners/regulators by presenting an aura of normalcy while concealing pledged assessments/ghost routing; the "lulling" principle in *Schmuck* applies to wires.

116. **FRCP/FRE.** Particularity satisfied; **FRE 902(13)/803(6)** for emails/portals; **FRE 1006** summaries; **FRCP 34(b)(2)(E)** native OFX/CSV/PST.

117. **RICO predicate. § 1343** wire-fraud predicates under **§ 1961(1)**.

**Count III – Bank Fraud (18 U.S.C. § 1344)**

118. Plaintiffs re-allege ¶¶ 1–119 and incorporate **Ex. EO, GE, PA, N**.

119. **Elements & doctrine. § 1344(1)**: scheme to **defraud a financial institution**; **§ 1344(2)**: obtaining bank **money/property** by **false/fraudulent pretenses**—without a separate intent-to-defraud-the-bank requirement. *Loughrin v. United States*, 573 U.S. 351, 355–63 (2014).

120. **Particulars – Rule 9(b).**

  **a. Collateral Assignment/UCC-1** pledging assessments **without a membership vote**, embedding **receiver rights** and suggesting governance authority to the bank. *(Ex. EO, B1)*

**b. Ghost account & backfill**: non-noticed accounts; **Oct. 2024 ACH miss**; **double-payment 11/12/2024** to backfill—false pretenses that masked deficits and misled depository controls. *(Ex. GE.)*

**c. PPP trail**: **$28,838** PPP-labeled entries across asset/liability/GL (CDARs **3462**, "**PPP Proceeds – 10/27**," "**PPP Reimbursement 3/31/2023 $28,838**") requiring **tracing** to determine whether Popular's custody/property was accessed via **false pretenses**. *(Ex. PA.)*

**d. Recorded instruments** implying authority inconsistent with practice (off-county depositories, altered procedures). *(Ex. N.)*

121. **FRCP/FRE.** Particularity satisfied; **native bank statements/ACH logs/deposit images/KYC** sought under **FRCP 34(b)(2)(E)**; **FRE 902(11)/(13)** for authentication; **FRE 1006** summaries.

122. **RICO predicate. § 1344** is a **§ 1961(1)** predicate.

**Count IV – Conspiracy Against Rights (18 U.S.C. § 241)***(pled alternatively with 42 U.S.C. § 1985(3); not pled as a RICO predicate)*

123. **125.** Plaintiffs re-allege ¶¶ 1–124 and incorporate **Ex. JN, BF, CN**.

124. **126. (Agreement & acts).** Defendants **agreed** to **suppress membership voting**, **threaten meeting closure**, and **discount** multi-owner complaints (**40-**

**owner** filing) — **injuring** the free exercise of rights under Florida's Condo Act.

*(Ex. B1; CN.)*

125.    **127. (Civil posture).** To the extent **§ 241** lacks a private civil cause in this District, Plaintiffs plead the same facts under **§ 1985(3)** and as **civil-RICO predicates** through **mail/wire/§§ 1503/1512/1519**.

**Count V – Honest-Services Fraud (18 U.S.C. § 1346)**

126.    Plaintiffs re-allege ¶¶ 1–127 and incorporate **Ex. D-1, D-2, D-3, B1**.

127.    **Elements post-Skilling. § 1346** criminalizes **bribes/kickbacks** (or undisclosed self-dealing tantamount to corruption) that deprive beneficiaries of **honest services**. *Skilling v. United States*, 561 U.S. 358, 409–10 (2010).

128.    **Plausible corruption/self-dealing theory.**

   **a. Policy machine** (CEOMC) admitting main lobbying role, interviews/endorsements, and **no-public-testimony** passage (D-1);

   **b. Regulatory entwinement** via DBPR Secretary's **legislative-lobbyist** filings (D-2);

   **c. Finance flows** from the **7300 Park Street** hub (D-3); and

   **d.** Counsel's **"board, not membership"** admission (JN) — collectively support an inference of **undisclosed conflicts** and **stream-of-benefits** influence.

129.    **Particularization via Receiver.** Plaintiffs will particularize **referral/ownership schedules, vendor equity, candidate-interview artifacts**, and **donor/legislator communications** to tie benefits to official actions, satisfying *Skilling*.

130.   **RICO predicate.** On proof of bribe/kickback/undisclosed self-dealing, **§ 1346** supplies a **§ 1961(1)** predicate.

**Count VI – Obstruction of Justice (18 U.S.C. § 1503), Witness Tampering (18 U.S.C. § 1512), and Records Obstruction (18 U.S.C. § 1519)**

131.   Plaintiffs re-allege ¶¶ 1–132 and incorporate **Ex. JN, BF, E, CN**.

132.   **Elements & scope. § 1503** (omnibus clause) covers acts intended to **influence/obstruct** the due administration of **justice; § 1512** covers **intimidation/retaliation** to hinder testimony/production; **§ 1519** criminalizes **alteration/withholding** of records to **impede** a matter **within U.S. jurisdiction** (e.g., banking/PPP oversight, federal agency proceedings).

133.   **Particulars.**

a. **Meeting-closure threats** and **vote suppression** during April meetings (JN).

b. **Certified C&D** intimidation and **law-enforcement referrals** against whistleblowers (E).

c. **Delete/do-not-contact** directives and **"zero-dollar" minutes** contradicted by a **$22,000** check — **§ 1519** records obstruction (BF).

d. **Executive downgrades** (resignations/caution letters) of confirmed notary violations; concealment enabling forged instruments (CN).

134.   **FRCP/FRE & relief. All-Writs** IT holds; **Receiver IT custody; Rule 37(e)** remedies for ESI spoliation; **FRE 803(6)/902** authentication; **FRE 1006** summaries.

135.   **RICO predicates. §§ 1503, 1512, 1519** are **§ 1961(1)** predicates.

## Count VII – Civil RICO (18 U.S.C. §§ 1962(c), (d))

136.   Plaintiffs re-allege ¶¶ 1–137 and incorporate **Ex.B1, GE, JN, BF, CN, D-1, D-2, D-3, E, EO, PA, GJ, LC, NAC10, N**.

137.   **Elements). § 1962(c) requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity**. *Sedima*, 473 U.S. at 496. **§ 1962(d)** prohibits **conspiracy** to violate § 1962(c).

138.   **Enterprise & conduct.** Defendants formed/participated in an **association-in-fact enterprise** with **purpose/relationships/longevity** (*Boyle*), and **operated/managed** it (*Reves*) through **policy authorship/entwinement** (D-1/D-2/D-3), **governance/banking/procurement** control (JN/BF/EO/PA/N/NAC10), and **retaliation** (E).

139.   **Pattern & predicates.** The enterprise engaged in **closed-ended continuity (2020–2025)** and presents a **forward-looking threat**, committing multiple **§ 1961(1)** predicates (**§§ 1341, 1343, 1344, 1346 (on proof), 1503, 1512, 1519**).

140.   **Injury & causation.** Plaintiffs suffered **coerced assessments, marketability loss, safety-mitigation costs**, and **retaliation injuries. Proximate cause** is satisfied (*Holmes/Anza*); **reliance** is not required for mail-fraud RICO (*Bridge*).

141.   Plaintiffs seek **treble damages (18 U.S.C. § 1964(c)), fees/costs**, and **equitable receivership (FRCP 66; § 1964(a))** with **28 U.S.C. §§ 754, 1692** filings to enable **nationwide** preservation/tracing and administration of a **native-ESI** production protocol (**FRCP 34(b)(2)(E)**).

142. **Rule 9(b)** particularity and **FRE authentication** are met (803(6)/803(8); 902(11)/(13)/(4)); **FRE 1006** summaries will streamline billing/ACH, donations, and procurement totals.

143. **Native ESI** demanded (OFX/CSV; CSV/XLSX; PST/EML with headers; MP4/WebM), with **All-Writs § 1651** preservation orders and **Rule 37(e)** remedies for ESI loss.

144. **Defenses neutralized: BJR** (no shield for fraud/statute/obstruction); **Noerr** (petitioning ≠ owner-facing deception/record tampering/finance routing); **reliance** (not required in mail-fraud RICO); **SOL** satisfied by recent acts and separate-accrual; **venue/jurisdiction** proper under **RICO § 1965(b)** ("ends of justice") with nationwide service/process.

145. **Remedy posture: Receivership (FRCP 66; § 1964(a))** with **§§ 754/1692** filings; **TRO/PI (FRCP 65)** with **Rule 65(d)** specificity; **7-day native productions** keyed to each count to **remove plausible deniability** and preserve the trial record.

## PRAYER FOR RELIEF

146. **WHEREFORE,** Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, and grant the following relief:

147. **Appointment of Receiver.** Appoint a federal receiver under Fed. R. Civ. P. 66 and 18 U.S.C. § 1964(a) to assume immediate control of the financial, contractual, and governance functions of the New Atlantis Club Condominium Association and the Point Brittany Administrative Corporation, including authority to:

A. Conduct a forensic accounting of all bank accounts and reserve funds;

**B.** Review, audit, and where necessary void contracts executed without lawful member votes;

**C.** Report quarterly to this Court on the condition of association finances and governance;

**D.** Preserve records and protect evidence from spoliation; and **E.** Restore lawful governance and protect residents from further racketeering injury.

148.    **Temporary Restraining Order and Preliminary Injunction.** Enter immediate injunctive relief under Fed. R. Civ. P. 65(b) prohibiting Defendants from:

**A.** Imposing or collecting further assessments tied to the fraudulent $3.5 million loan or fabricated $1.5 million hurricane damage estimate;

**B.** Proceeding with demolition or construction projects ratified without statutory membership votes;

**C.** Retaliating against Plaintiffs or class members through cease-and-desist letters, certified mail threats, fabricated law enforcement referrals, or exclusion from meetings;

**D.** Destroying, concealing, or altering association records, bank statements, or investigative files.

149. **Declaratory Relief.** Declare that Defendants' conduct violated Plaintiffs' rights under the U.S. Constitution, RICO (18 U.S.C. §§ 1961–1968), the False Claims Act (31 U.S.C. §§ 3729–3730), and 42 U.S.C. § 1983.

150.    **Voidance of Fraudulent Instruments.** Declare that contracts, amendments, and instruments executed through fraudulent notarizations, concealed ghost accounts, or unlawful board ratifications are null and void.

151. **Permanent Injunction.** Permanently enjoin Defendants from further use of fraudulent accounts, fabricated assessments, forged amendments, retaliatory mailings, or statutory laundering.

152. **Damages.** Award compensatory damages for coerced assessments, unlawful debts, estate losses, and retaliatory injuries in an amount to be proven at trial.

153. **Treble Damages.** Award treble damages as provided by 18 U.S.C. § 1964(c) for civil RICO violations.

154. **Punitive Damages.** Award punitive damages sufficient to deter future misconduct.

155. **Attorneys' Fees and Costs.** Award reasonable fees and costs, including under 18 U.S.C. § 1964(c), 31 U.S.C. § 3730(d), and 42 U.S.C. § 1988.

156. **Further Relief.** Grant such other relief as this Court deems just and proper to redress constitutional violations, protect elderly and disabled residents, and restore lawful governance to Florida condominium associations.

## VERIFICATION

157. Pursuant to 28 U.S.C. § 1746, each Plaintiff declares under penalty of perjury that the foregoing is true and correct to the best of their knowledge, information, and belief.

Executed this _11_ day of _September_ 2025.

**SIGNATURES**

Respectfully submitted,

/s/ Krstafer Pinkerton
**Krstafer Pinkerton**_
Pro Se Plaintiff
28646 Drew Rd.
Chiloquin, OR 97624
Tel: (541) 591-6154

/s/ **Robin Devine**
Robin Devine_
12760 Indian Rocks Road, Unit 571
Largo, FL 33774
Tel: (727) 434-2555

/s/ **Tim Jenkins**
**Tim Jenkins**_
5200 Brittany Drive South Unit 204
Saint Petersburg, Florida 33715
Tel: (916) 259-6162

/s/ **Danielle Jenkins**
**Danielle Jenkins**_
5200 Brittany Drive South Unit 204
Saint Petersburg, Florida 33715
Tel: (916) 276-5645

/s/ **Dan Foss**
**Dan Foss**_
5200 Brittany Drive South, Unit 1201
St. Petersburg, FL 33715
Tel: (620) 200-1808

/s/ **Beth Foss**
**Beth Foss**_
5200 Brittany Drive South, Unit 1201
St. Petersburg, FL 33715
Tel: (620) 200-1808

# CERTIFICATE OF SERVICE — USPS CERTIFIED MAIL

## Certificate of Service — USPS Certified Mail

I certify that on August 22, 2025, I served the FDIC Enforcement Referral & Complaint by depositing it in the United States Mail, postage prepaid, via USPS Certified Mail, addressed to: FDIC Consumer Response Center, 1100 Walnut Street, Box #11, Kansas City, MO 64106. USPS Certified Tracking No.: 9589071052702634942975.

## Service List / Additional Parties (if any)

**Signature**

Executed on _9/11/25_ by _____ (name), on behalf of Plaintiffs.

Generated 2025-09-08 13:39